## SEARS *vs.* MACK'S ASSIGNEES.

*In the matter of the estate of* WILLIAM RENWICK, *deceased.*

THE surplus of the proceeds of the sale of the real estate of a deceased person, remaining after the payment of his debts, is distributable among his heirs, or the persons claiming under them.

The sale and conveyance by the administrator, under the order of the Surrogate, pass all the estate, right, and interest of the deceased in the lands at the time of his death, and oust the title of the heirs and all persons claiming under them. But the title of the heirs to the surplus of the proceeds, is recognized by the statute.

If, at the time of the sale, there are liens by mortgage, judgment, or decree, against the portions of any of the heirs, it is equitable that on a claim filed, such liens should be admitted as a valid charge against the shares of the heirs in the surplus.

The equity of general-lien creditors, is regulated by the priority existing at the time of the sale.

An amendment of a docket of a judgment made after the title of the judgment debtor has been divested in due course of law, does not operate to give a lien on the estate so sold under a prior incumbrance.

Where a judgment was correctly docketed in every respect except that the time when it was perfected was entered as of 1842, instead of 1841, *Held,* that the error was not substantial as against a junior judgment creditor claiming priority of lien in consequence of such mistake, upon surplus monies.

S. M. WOODRUFF, *for Mack's Assignees.*

I. The sale had on the 8th day of January, 1851, by order of the Surrogate, divests the lien of any judgment creditor of Robt. J. Renwick.

II. The sale was had under the Surrogate's order, within the existence of the lien of the Mack judgments.

III. If a sale had been made under these judgments, of the lots sold by the Surrogate's order prior to such last

sale, no·valid title could have been made, and the purchaser would have been without remedy.

IV.   Judgments are liens upon surplus proceeds of sale, according to their priorities at the time of commencement of proceedings, when such proceedings necessarily terminate in a sale.

V.   In cases of foreclosure, the rule of reference is to ascertain liens on the premises sold at the time of sale. (*Vide Sup. Court Rule* 51.)

VI.   The proceeds to be distributed are in the nature of personal assets, and as such, liable to the rule of priority governing executors.     (*Vide Ainslie* vs. *Radcliff*, 7 *Paige*, 439.)

On the question of the jurisdiction of the judge of the County Court, to make amendment, the following points are offered :—

I.   By the act of 1844, § 7, p. 92, the Legislature gave the power to the Courts of Com. Pleas, to amend all their records *nunc pro tunc.*

II.   The VIth art., § 14, of the constitution, provides that the County Court shall have such jurisdiction in special cases as the Legislature may prescribe.

III.   By sects. 29 and 36, of the judiciary act, provision is made for the County Court to have the same jurisdiction as Com. Pleas Courts—not inconsistent with the constitution. (*Vide Laws of* 1847, *p.* 330.   *Vide p.* 355, § 55, *p.* 336, § 58.)

IV.   The proceedings provided to be had by the above

sections of the judiciary act, are legislative constructions of the constitution on the points in question. (*Vide 5th Bar. Sup. Court Rep., p.* 169.)

V. In the case of *Buchan* vs. *Sumner,* 2 *Barbour Ch. Rep.* 165, there was *no* docketting of the judgment which could by any possibility give notice to others, it being docketed against *Mr. Sumner,* and not *Mr. Palmer,* the debtor.

In the case of *Renwick,* the docket gave as full notice as if it were in all respects correct.

The only mistake was putting 1842 in place of 1841, as the year of recovery: the county, the amount, the month and day of the month, were all correct; and Mr. Sears had as much notice of the judgment when he recovered his, and five years before, as if the error had not been made. It was of no importance to him.

1. In *Buchan* vs. *Sumner,* the Superior Court, which made the order to amend, expressly reserved the rights of the subsequent judgment creditors, from which order there was no appeal.

Here the order of the County Court is otherwise; it directs the amendment *nunc pro tunc,* without such reservation; so that the docket is now, as if there had been no error in it. On this point Mr. Sears was heard before that Court, and it is *res judicata.*

2. In *Buchan* vs. *Sumner,* the rights of the subsequent judgment creditor, whatever they were, were fixed *before the act of* 1844.

That was the principal ground on which the Mount Vernon Bank relied (*p.* 174) and on which the Superior Court reserved their priority (*p.* 176.)

Here, Mr. Sears' judgment was long *after* the act of 1844.

3. The Chancellor's opinion does not indicate that, in a

case like the present, he would have given priority to the subsequent judgment.

That the land had been sold and converted into money, could make no difference.

The case of *Hunt* vs. *Grant*, 19 *Wend.*, 91, exhibits the correct rule: to wit., that the amendment, in a case like the present, is to be made as against subsequent judgment creditors, unless it is shown they have been misled by the error, and acted upon it. In that case the *amount* was changed from $3,000 to $30,000; much more important than the date.

G. C. GODDARD, *for Mack's Assignees.*

I. Stephen Mack, a judgment creditor of Robert J. Renwick, one of the heirs of William Renwick, is entitled to receive the proceeds of the sale which fall to Robert's share.

1. The lands sold descended to the heirs, and the judgments against Robert became liens on his undivided share in their order of priority, those of Mack being the first.

2. Mack's judgments were liens on Robert's share down to the time of the sale in this case; subject, however, to the right of the creditors of William to have the property sold for the payment of his debts.

3. The sale by order of the Surrogate, though subject by statute to judgments against William, if there were any, was of course free from judgments against the heirs. *All* William's right was sold, and his right was not affected by judgments against his heirs.

4. The liens on Robert's share being divested by the sale, and the property vested in the purchasers, and there being a surplus from the sale; it must be distributed according to the rights of parties at the time of the sale.

This is the rule in all other cases of the sale of real estate under foreclosure, in partition, &c. : the proceeds are paid to judgment creditors as they stood at the time of the sale, whether ten years have elapsed at the time of distribution or not.

After the property is thus sold, a judgment creditor could not, by *scire facias* or action of debt, revive his lien on it.

If the judgments were still liens on the land, they would be enforced against it, if not paid from the sale.

The amount due on Mack's judgments much exceeds the amount coming to Robert. He has no other security ; if he had, then, after being paid in full, other judgment creditors might, by subrogation, have the benefit of such other security.

II. The *County Court* had power to make the order amending the docket.

*Act of* 1844, *chap.* 104, *sec.* 7, p. 92, gives the power to the *Courts of Common Pleas.*

This power has since been given to the *County Courts.*

*Constitution, art.* 6, *sec.* 5. The *Legislature* retains the power to regulate the jurisdiction and proceedings in law, &c.

*Constitution, art.* 6, *sec.* 14. The County Court has such jurisdiction in *special cases, as the Legislature may* prescribe.

*Judiciary Act,* 1847, *sec.* 29, *p.* 328. *County Courts* have power, to hear and determine all matters, *specially conferred by Statute on the Courts of Common Pleas.*

*Judiciary Act,* 1847, *sec.* 36. All laws relating to the *Common Pleas,* their powers, duties, and proceedings, are applicable to the *County Courts,* so far as consistent with the constitution.

*Code,* 1851, *sec.* 30, *subdivision* 11. *County Courts*

are to exercise all *powers* and jurisdiction conferred, *by statute*, on the Courts of *Common Pleas*.

III. The 14*th art. of the constitution, sec.* 5, transferring suits *pending* in the Common Pleas to the Supreme Court, does not affect this question.

1. A judgment is not a suit *pending*.

2. Amending the mistake of a clerk in docketing a judgment is not a proceeding affecting the judgment, like a motion for new trial, alteration of the record, &c., no more than *issuing*, and of course *regulating*, *executions* on judgments, which the 55th sec. of the judiciary act provides for.

The case 3 *How. Prac. Rep.*, 175, sustains this, and only enlarges the ordinary import of the word *pending*, so far as to embrace any proceeding which calls in question the judgment itself.

IV. The Surrogate will not deem it necessary to inquire *how* the docket, of which a transcript is now produced, was entered on the records of this county, any further than to give each party every opportunity to seek his remedy elsewhere, to correct it if it is wrong—if the alleged error will work injustice.

Had the clerk of the county amended the record *without any order*, the Surrogate would probably not look beyond the docket as amended, except to give the complaining party such opportunity. So if it was alleged that the court who rendered the *judgment had no jurisdiction*, the Surrogate would not collaterally investigate the question. If the Surrogate looks beyond the docket *as it is*, to what it *should be*, that is, to make it conform to the *truth* and the *fact*, he then finds that Mack's judgments were obtained, and were docketed in this county, before that of Mr. Sears.

V. Amending the docket of a judgment, by correcting the error of a clerk, *nunc pro tunc*, is a matter of course,

and a subsequent judgment creditor cannot object. (2 *Rev. S.*, *p.* 424, §§ 7 *and* 8.) The power also existed at common law. This is not repealed. (3 *Prac. Rep.*, 305; *Hunt* vs. *Grant & Towbridge*, 19 *Wendell*, 90 ; *Seaman* vs. *Brake*, 1 *Caines* ; *Close* vs. *Gillespey*, 3 *Johns*', 518.)

*Act of* 1844, *p.* 92, gives this power in terms.

---

WM. S. SEARS, *in person.*

I. If, for the purpose of this argument we consider the judgments held by Gordon Burnham as regularly docketed in the office of the Clerk of the County of New York, the lien of the judgments was lost before the sale of the property on 16th and 17th streets was made and confirmed, for the following reasons :—

1st. The judgments were docketed on the 15th March, 1841.

2d. They continued a lien for ten years, only as against purchasers in good faith, mortgagees, and judgment creditors or otherwise. (2 *R. S.*, 4th *ed.*, *p.* 606, § 5.)

3d. The order confirming the sale of these parcels of land was not made until the 9th of May, 1852.

4th. The sale is not made, nor the heirs divested of the property, until the order confirming the sale is made. (2 *R. S.*, 4th *ed.*, *p.* 290. § 34 ; *Rea* vs. *McEachron*, 13 *Wendell*, *p.* 465 ; *Atkins et. al.* vs. *Bostwick*, 20 *Wendell*, *p.* 241.)

5th. The judgments held by Burnham must be considered as junior judgments to the judgment held by Sears. (*Exparte The Peru Iron Company*, 7 *Cowen*, *p.* 540 ; *Tufts' Administrator* vs. *Tufts*, 18 *Wendell*, *p.* 621.)

6th. The distributive share of Robert J. Renwick, of the proceeds of the sale of these parcels, must be applied to the payment of the judgment held by Sears, it being the prior lien.

II. On the part of the judgment creditor Sears, it is insisted that neither of the judgments recovered by Stephen Mack against Robert I. Renwick, in the Court of Common Pleas for Tompkins County, and now claimed by Gordon Burnham, ever formed a lien upon the real estate of Robert I. Renwick, sold under the decree of the Surrogate,—for the reasons hereafter stated :

1. The judgments purport to have been docketed in Tompkins County Common Pleas, on the 15th day of March, in the year 1841, and docketed in the office of the clerk of the city and county of New York, on the 3d day of May in the year 1842, as recovered on the 15th day of March, in the year 1842.

By the Act of May 14th, 1840 (*See Statutes of* 1840, *p.* 334, § 25), no judgment or decree which shall be entered after this act takes effect, shall be a lien upon real estate, unless the same shall be docketed in books to be provided and kept for that purpose by the county clerk of the county where the lands are situate.

§ 26.   After this act takes effect, when judgments shall be perfected in the Supreme Court, or at any time within five years thereafter, the clerk, on request and on payment of the fees for the same, shall furnish the party with one or more certificates or transcripts containing all the facts necessary to make a perfect docket of the judgment ; and on presenting such transcript to any county clerk, he shall immediately file the same, and docket the judgment in the manner required by law, specifying the court in which the judgment was recovered, the day or the hour on which it was perfected, and the day and hour of docketing the same.

§ 29.   The judgments of the Superior Court of the city of New York, and of any court of common pleas, recovered after this act takes effect, may be docketed in the manner above mentioned in any other county than

26

that in which the judgment was rendered, with the like effect as is above provided in relation to judgments in the Supreme Court.

2. Over the judgments so docketed, the law did not give either of the courts any power to correct, alter, or amend the docket; and this remained so until the year 1844, April 1st (*See Laws of* 1844, *p.* 92, § 7), when the Legislature gave the Superior Court, and other courts, power to direct the amending and correcting such dockets, and the docketing judgments *nunc pro tunc* with said county clerks.

It clearly appears from the passage of this act, that all the jurisdiction either of the courts had over their judgments and the dockets, was conferred by the above act, and that the courts did not previous to the passage of that act pretend to exercise any equitable or common-law jurisdiction over these judgments or the dockets.

3. The Courts of Common Pleas referred to in that act, have been all abolished by the constitution, except the Court of Common Pleas for the city and county of New York.

The constitution which took effect on the 1st day of January 1847 (*Article* 6, § 14) declares, "The County Court shall have such jurisdiction in cases arising in Justices' Courts, and in special cases, as the Legislature may prescribe; but shall have no original jurisdiction except in such special cases."

The Legislature may confer equity jurisdiction in special cases upon the County Courts.

*Article* 14, § 5, declares that jurisdiction of "all suits and proceedings originally commenced and then pending in any Court of Common Pleas (except in the city and county of New York) shall," on the first Monday of July, 1847, "become vested in the Supreme Court, hereby established. Proceedings pending in courts of Common Pleas and in suits originally commenced in Justices' Courts,

shall be transferred to the County Courts provided for in this constitution."

This section of the constitution vested in the Supreme Court every judgment then recovered in the Common Pleas courts, except those included in the exception, viz., those judgments which originated in the Justices' Courts. The term " pending" used in this section, does not restrict this section to causes in a state of litigation, but means all judgments as well as proceedings upon which any further adjudication was to be had. This is the only view of the section which can be taken, to render it consistent with the constitution and the judiciary act. This construction has been put upon the section by Judge Welles in his able opinion in *O'Maley* vs. *Rees*, 3 *Howard's Practice Reports*, *p.* 175.

4. The jurisdiction of the Courts of Common Pleas, in all actions, was by the constitution vested in the Supreme Court, except such as originated in the Justices' Courts, which are reserved by the above section.

The judiciary act of 1847 (*Laws of* 1847, *p.* 328, § 29– 36,) confers jurisdiction upon the County Courts in certain cases.

§ 30. The County Court in each county shall have power to hear, try, and determine according to law, suits and proceedings by *scire facias* to revive any judgment in said Court, or that shall have been rendered in the present Court of Common Pleas of said county, or to have execution of judgment.

The only construction which can be given to this section to make it consistent with the constitution, is that the County Court can exercise the powers enumerated in the section, upon the judgments remaining in the county Courts under the constitution. This is the section which Chief Justice Bronson considers unconstitutional. (*See* 4 *Comst. R.*, *p.* 581., *Griswold* vs. *Sheldon.*)

5. The 58th section of the judiciary act gives the Su-

preme Court power to revive any judgment of the then Supreme Court, and to have execution; and to revive any judgment in the Court of Common Pleas which shall on that day become vested in the Supreme Court organized by this act.

By the 59th section of the same act, any judgment or decision in any suit or proceeding *pending* in any Court of Common Pleas on the first Monday of July, 1847, which shall on that day become vested in the Supreme Court organized by this act, may be revived, and other proceedings had thereon by writ of error, *certiorari,* or *mandamus.*

This is shown by the division of the clauses of the sentence. The relative " which " must be refered to the principal subject of the sentence, which is the judgment or decision.

It provides for bringing a writ of error in the Supreme Court, on such judgment. If, as the judge of the County Court supposes, suits before judgment only, became vested in the Supreme Court, and not judgments already rendered in the Courts of Common Pleas, and, this section means only that the *suits* or *proceedings* became vested in the Supreme Court, and not the judgments, we should have the anomaly of the Legislature providing for a review of judgments rendered in the Supreme Court (for, the suit being vested in the Supreme Court before judgment, the judgment when rendered, must necessarily be the judgment of that Court) by the same Supreme Court; and there is nothing to render it probable that the Legislature intended to introduce any such anomaly as that of a Court reviewing its own judgments by writ of error. Whereas, if it is the *judgment* or *decision* of the Common Pleas, that becomes vested in the Supreme Court; inasmuch as it is only the judgment of the Court of Common Pleas, there is no incongruity in its being reviewed by the Supreme Court on writ of error.

The last sentence of Section 59 also shows that it is the judgment of the Common Pleas that became vested in the Supreme Court; because it provides for a class of decisions rendered in the Common Pleas, which did *not* become vested in the Supreme Court, but in the County Courts. This evidently refers to decisions in suits originally commenced in Justices' Courts, which by Section 5 of the constitution, did not become vested in the Supreme Court, but were transfered to the County Courts.

6. If the county judge is right in his opinion, and the judgment in this case still remains in the County Court, still no power exists in that Court to grant the motion to *amend.* This point, which is left untouched by the opinion of the county judge, is fatal to the application to amend.

It appears from the preceding acts that by the judiciary act the County Court had no jurisdiction left to it over this judgment.

7. We will now examine the jurisdiction conferred by the Code of 1848 upon the County Courts.

*Laws of* 1848, *p.* 503, § 32. " All statutes now in force conferring or defining the jurisdiction of the County Courts are hereby repealed, and those Courts shall have no other jurisdiction than that provided in next section. But the repeal contained in this section shall not affect any proceeding now pending in those Courts."

The 33rd Section does not confer any jurisdiction on the County Court over this judgment.

The Code of 1849. (*See Laws of* 1849, *p.* 613–619, § 29.) " All statutes now in force conferring or defining the jurisdiction of the County Courts, *so far as they conflict with this act* are repealed, and those Courts shall have no other jurisdiction than that provided in the next section. But the repeal contained in this act shall not affect any proceedings now pending in those Courts.

The *Code of* 1851, *p.* 11, *sec.* 29, is the same.

*Section* 468 (*page* 704 *of Laws of* 1849) repeals all. statutory provisions inconsistent with this act, but the: repeal shall not revive statutes or laws which have been repealed.

The *Amendments to the Code*, *by Act of the Legislature of* 1851, have the same clause. (See *Laws of* 1851 [*Code*], *page* 145, *sec.* 468.)

The *Statute of* 1844 ( see *Laws of* 1844, *ch.* 104, *sec.* 7), was repealed by the constitution, by the judiciary act, and by the Code of 1848, 1849, and 1851.

8. The judgments in question never formed any lien upon the real estate of the defendant in the county of New York, for the reason that they were not docketed as required by the act of 1840 ; and unless docketed as required by the act, the docketing in that clerk's office had no more force or validity than if they had never been docketed.

In the case of *Ex parte Becker*, 4 *Hill's R.*, *p.* 613, Chief Justice Bronson decided that a judgment recovered after the Act of 1840 took effect, although in the Supreme Court, in a suit commenced before the act was passed, was not a lien upon real estate, unless docketed in the county where lands are situate.

9. We will now suppose that the County Court could have amended this docket: must not the amendment be subject to the rights of other incumbrancers and judgment creditors?

In the case in 10 *Wendell*, *p.* 542 (*Ex parte Butler et al.* vs. *Lewis Common Pleas*) in which all the previous cases are examined—Justice Nelson decided that judgment creditors are on the same footing, by the Revised Statutes, that purchasers and mortgagees were by the Revised Laws of 1813.

The case in 3 *Cowen*, *p.* 39, *Chichester et al.* vs. *Cande*, was upon the principle, 1*st :* That the junior judg-

ment creditors had notice of the previous judgment, and *2nd :* That the preference contended for was upon personal property. At *page* 53 *of that case*, the judge says : "Here is not a struggle in relation to freehold estate, the disposition of which might be controlled by the priority of the judgments, which are themselves liens upon that kind of property." (See 10 *Wend., p.* 542.)

In those cases there was notice. This case differs : there is not any notice.

The priority sought to be established is upon real estate.

In the case of *Taylor* vs. *Ranney et al.*, 4 *Hill, p.* 619, where the real estate had been sold by junior judgment, and the *fi. fa.* had been returned satisfied on the previous judgment, on application to correct the return of the *fi. fa.*, the Court reserved the rights of the junior judgment creditors.

10. Uis Honor, Judge Boardman, erred in allowing the amendment, for the reason that the County Court had no jurisdiction of the matter.

The jurisdiction of any court exercising authority over a subject may be inquired into in every other court where the proceedings of the former are relied upon, and brought before the latter by a party claiming the benefit of such judgment or proceedings. (See 4 *Howard's Practice Rep., p.* 429 ; *Doty* vs. *Brown.*)

It was held also, in the same case, that if the former court acted without authority, its judgment and proceedings were void, and formed no bar to a remedy brought in opposition to them.

THE SURROGATE. The real estate of the intestate having been sold for the payment of his debts, the surplus of the proceeds remaining after satisfying all claims, was distributed among the heirs of the intestate, except the share of Robert J. Renwick, which was reserved for further direc-

tions. The statute directs the payment of the surplus to the heirs, " or the persons claiming under them " (2 *R. S.*, *p.* 107, § 43). The sale and conveyance by the administrator, under the order of the Surrogate, passed all the estate, right, and interest of the deceased in the lands, at the time of his death (2 *R. S., p.* 105, § 31 ), and of course ousted the title of the heirs and all persons claiming under them. But the title of the heirs to the surplus, remaining after the payment of the debts, is recognised by the statute ; and if, at the time of the sale, there were liens by mortgage, judgment, or decree against the portions of any of the heirs, and which liens have been cut off by the sale,—it would seem equitable that, on a claim being filed, such liens should be admitted as a valid charge against the shares of the heirs in the surplus. Stephen Mack's assignee, and William S. Sears, judgment creditors of Robert J. Renwick, one of the heirs of the intestate, intervened for the protection of their respective interests, at an early stage of the proceedings instituted for the sale of the real estate ; and, on the distribution of the surplus, they claimed payment of their judgments out of the share of Robert. Mack recovered two judgments against Robert J. Renwick, in the Court of Common Pleas of Tompkins county, on the 15th of March, 1841. Transcripts were filed in the office of the clerk of the county of New York, on the 3rd of May, 1842; but the judgments were incorrectly docketed as perfected on 15th of March, 1842, instead of the 15th of March, 1841.

Mr. Sears, whose judgment was recovered in the Supreme Court, on the 11th of December, 1847, and was regularly docketed in this county, claims that the judgments of Mack were not prior liens on Robert's interest in the lands in question, by reason of the defect or error in the dockets. He also urges that, even if correctly docketed, the liens had expired before the sale ordered by the Surrogate had been confirmed.

The sale was made the 8th day of January, 1851; the report of sale was filed January 25th, and, on the same day, an order of confirmation was entered. On the 1st of February the order of confirmation was modified so as to except therefrom four lots; and, on the 9th of May, the order making this exception was vacated as to three of the lots. I do not deem it necessary to discuss the effect of these several orders, being satisfied that the equity of general lien creditors is regulated by the time of the sale. Though the title is not divested until the conveyance is made, yet, when the deed is executed, the equitable rights of the purchaser relate back to the time of sale. The rule in equity has been to inquire what liens existed at the time of sale, and to make distribution accordingly. If the defect or error in the dockets of the Mack judgments was a vital one, then they were no liens at the time of the sale, and the question is at an end. It is urged, however, that the error, supposing it fatal, was capable of amendment; and the county judge of Tompkins county having, on the 9th of February, 1852, made an order directing the county clerk to correct the dockets, *nunc pro tunc*, it is insisted that the effect of this order was to make the judgments a lien. Without inquiring whether the county judge was the proper officer to order the correction of the dockets, it is manifest that, even if the act of 1844, *ch.* 104, § 7, is retrospective, the order of the county judge was made after ten years since the recovery of the judgments, and of course at a period when, if originally docketed correctly, they would have ceased to become a lien. Before his order, the sale of the lands had been made, the title of the property been passed by the conveyance, the proceeds been paid into court, and the relative rights of all the parties been fixed. I think the case is clearly brought within the language of the Chancellor in *Buchan* vs. *Sumner*, 2 *Barb. Ch., R.* 165, where he says, " The rights of the parties to the surplus moneys were in nowise

affected by the order of the Superior Court to amend the docket of the respondent's judgment, *nunc pro tunc.* Before that order was made, the mortgaged premises had been sold and conveyed by the master, and the surplus moneys had been brought into this Court; ·so that, if the Superior Court had the power, under the Act of April, 1844, to order a judgment to be docketed *nunc pro tunc,* so as to give it a priority as a lien upon real estate over an intermediate judgment, it could not give a lien upon real estate which had been sold and conveyed under a decree upon a prior incumbrance, long before that order was made."

It is clear, in the present case, that the order of the county judge could not make the judgments a lien on the lands, after the lapse of ten years since the recovery of the judgments, and after the lands had been duly sold upon a prior lien. The force and effect claimed for his order, then, are no less than that it made the judgments a lien upon surplus moneys—a subject over which, it seems to me, no jurisdiction was vested in him. In *Buchan* vs. *Sumner,* the order of the Superior Court amending the docket was made within ten years from the recovery of the judgment; in the present instance it was made after the expiration of the ten years. In other cases, action was had within the ten years. (*Ex parte Butler* vs. *Lewis Co. C. P.*, 10 *Wend.*, 542. *Roth* vs. *Schloss,* 6 *Barb.* 308.) In *Hunt* vs. *Grant,* 19 *Wend.*, 90, the order was made two years after judgment entered. That case establishes the power of the court to make the amendment in a material point, as against subsequent incumbrances ; but it may well be doubted, if the relief would have been granted, if the lien, as against subsequent judgments, had expired without any proceedings having been taken to enforce it. The largest effect that can be claimed for the order of amendment of the county judge is, that it would have effected a lien *nunc pro tunc,* if there had been anything for it to act

upon. And though I cannot perceive how the making the lien *now* as good as it might have been *then*, could have the effect of extending the lien beyond ten years, as against junior judgments; yet, supposing my view on that point erroneous, it seems a sufficient answer that the lands were sold and conveyed, and the power to amend was invoked too late.

The question then is narrowed down to the point, whether the dockets of the judgments made on the 3rd day of May, 1842, were so defective as to prevent a lien attaching on the lands? The statute declares that judgments shall not affect lands, unless docketed " *as herein directed* " (2 *R. S.*, *p.* 360, §11 [ § 12]); and provides that the clerk shall enter, in an alphabetical docket, a statement of such judgment, containing the names of the parties, " with their places of abode, titles, trades, or professions, if any such are stated in such record," the amount of the judgment and costs, and " the hour and day " of entering such docket. The act of 1840, directing judgments to be docketed in the office of the clerk of the county where the lands are situated, required the clerk to file the transcript and " docket the judgment, in the manner required by law, specifying the court in which the judgment was recovered, the day and the hour on which it was perfected, and the day and hour of docketing the same." ( *Laws* 1840, *ch.* 386, § 26.) Supposing " day " to mean date ; is an error in the date, of necessity fatal to the regularity of the docket? If everything prescribed to make a perfect docket is essential, a mistake in the hour, the day of the month, or in the abode, title, trade, or profession of the parties, would be fatal. And yet, that can hardly be contended. What terms are mandatory and what directory in a statute, has often been discussed. Negative words make a statute imperative; and in this case the statute uses negative words: " No judgment shall affect any lands, &c., unless the record thereof be filed and docketed, as herein directed." These

are imperative words (*Dwarris on Statutes*, 715); but then, do they require a *literal* compliance in every precise particular, or a substantial compliance? (*Rex* vs. *Birmingham*, 8 *B. & C.*, 29.) A substantial compliance would appear to be sufficient. Form may be of essence, but even then a substantial conformity is enough. (*Davison* vs. *Gill*, 1 *East.*, 62.) Time may be of essence, but the precise time, in many cases, is not. (*Rex* vs. *Loxdale*, *Burr*, 447.) In *Braithwaite* vs. *Watts*, 2 *Crom.* 8 *Jervis*, 318, only the issues were docketed, and not the judgments. In *Sale* vs. *Crompton*, 2 *Strange*, 1209, there was a material error in the name. In *Hunt* vs. *Grant*, 19 *Wend.* 90, there was a mistake in the amount. In *Landon* vs. *Ferguson*, 3 *Russ. Ch. R.*, 349, the judgments had not been docketed at all, through the fault of the clerk. In *Buchan* vs. *Sumner*, 2 *Barb. Ch. R.* 165, the docket was not made under the surname, but the Christian name.

An error in the date of the judgment may be material, as, for example, where the judgment is described as perfected at an earlier period; but in the present case the mistake was in placing it a year later—a circumstance in nowise affecting or prejudicing the junior judgment creditor. The judgment was docketed. The docket stated exactly the names, amount, the day and hour when perfected, but erred in the year, making it 1842 instead of 1841. Though liens on land are given only by statute, and cannot be extended in equity (*Mower* vs. *Kipp*, 6 *Paige*, 88; 6 *Ohio R.* 162), yet I am loth to hold the mistake of the docket in this case such a substantial and material defect, as to prevent the lien attaching; and must, therefore, decree payment out of the surplus moneys, first to the assignee of the Mack judgments.