WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.
May, 1878.

## CLOCKE v. IGGLESDEN.

*In the matter of the estate of* SARAH IGGLESDEN,
*deceased.*

After the sale of some of a decedent's real estate to pay certain debts,
upon an order of the Surrogate, and the entry of an order for their
payment and for the distribution of the surplus, and after such pay-
ment and a partial distribution had been made thereunder, a judgment
and decree construing decedent's will was rendered by the Supreme
Court, in an action previously brought for the purpose, and thereupon
an order was granted by a judge of that court directing the Surrogate
to pay out of the surplus an allowance and costs to the attorney who
conducted the action in the Supreme Court, *Held*, that the attorney
should have applied to the Surrogate at the time the order for distri-
bution was made, and that the judge of the Supreme Court had no
jurisdiction to make the order directing such payment from the surplus.

ON the 9th day of July, 1877, a petition was pre-
sented by a creditor of the deceased, praying for a sale
of the real estate of which the deceased died seized, or
so much thereof as might be necessary for the pay-
ment of her debts.   The petition showed that she died
June 22d, 1877, leaving a will, which was duly proved,
July 24th, 1872 ; that on the 23d July, 1875, the ex-
ecutors named in the will, and who had qualified as
such, were duly removed, and John Igglesden, Jr., and
Charles Foulke were, on the 27th September, 1876,
appointed administrators, with the will annexed; that
said John Igglesden, Jr., died prior to the presentation
of said petition ; that the deceased died seized of two
lots of land — one in the town of Eastchester, valued
at $1,000, and one at Tremont, in the 24th Ward of

the city of New York, valued at $2,500; that the names and ages of the heirs and devisees *and other persons interested in said estate,* were as follows: Joseph Igglesden, of full age, and Charles Igglesden, about fifteen years of age, only surviving children and heirs-at-law of deceased; John Igglesden, husband of deceased, of full age, and Sarah Igglesden, widow of John Igglesden, Jr., one of the children and heirs-at-law of deceased.

No cause being shown to the contrary, a sale was duly ordered. The premises at Eastchester only were sold for $950, on the 12th day of January, 1878, and the proceeds paid into court. The sale was confirmed on the 16th, and a conveyance executed accordingly. On the 10th day of April, 1878, the usual order establishing claims to the amount of $94.96 and a decree of distribution were made and entered, which, after directing payment of the taxes and expenses of sale, amounting to $297.20, and the debts aforesaid in full, ordered the surplus, to wit, $567.84, to be distributed as follows: $33.84 to Sarah Igglesden, widow, as a sum in gross for her dower interest, which she consented to accept; to Joseph Igglesden, devisee, $141.96; to Charles Igglesden, a minor devisee, $141.96, to be invested, and to John Igglesden, the husband of testatrix and father of the devisees, Mary Ann and John, Jr., both of whom were dead, the sum of $250.08, which had been diminished to that amount by the sum in gross to the widow, and the same was directed to be invested for his benefit during life. On the same day of the date of the decree, the attorney who had conducted the proceedings was allowed and paid the sum

of $50, the debts were paid, as was also the widow paid her sum in gross.

During the life time of John Igglesden, Jr., he commenced an action in the Supreme Court against his father and the surviving devisees for the construction of the will of the testatrix, some of its provisions appearing to be illegal. On the 12th May, 1877, a decree was entered in said action construing said will and awarding the costs of plaintiff's attorney and those of the guardian *ad litem* to be paid out of the respective shares as fixed by the decree. On the 30th *day of April,* 1878, an order was made in said action granting an extra allowance to plaintiff's attorney, and on the next day (1st May) the costs were taxed and judgment final was entered. On the same day, the judgment, or a copy of it, together with the certificate of the clerk showing that the costs, to the amount of about $220, had been taxed, was exhibited to the Surrogate by the plaintiff's attorney, and a request made that he would pay them out of said surplus so directed by the decree to be distributed as aforesaid. The Surrogate did not comply with the request.

On the 15th May, 1878, said attorney produced to the said Surrogate an order made in said action on the preceding day by a Justice of the Supreme Court, directing and ordering him to pay said costs out of said surplus.

G. D. W. CLOCKE, *attorney in person.*

THE SURROGATE. — Mr. Clocke was the attorney for the plaintiff in the action of Igglesden *v.* Igglesden, and he is also the attorney who conducted throughout

the proceedings for the sale of the real estate in this matter. He presents to me now the question as to whether my duty under the statute will permit me to obey the order made by a superior court. I have the greatest possible respect for the court which the learned judge who granted the order adorns, and should cheerfully obey any proper direction it might give, but this, I apprehend, is an independent, though inferior, tribunal. It ought not to be interfered with while engaged in the discharge of its proper functions by any court, however exalted. When it has completed its duties by making an order or final decree in any matter, its doings may be reviewed and its action reversed or affirmed on appeal; but I think the Supreme Court has no more power to order what I shall do in a pending proceeding than a county judge has to send an order to a justice of the peace commanding him to admit or reject evidence or directing what judgment he shall render in a case pending before him. (See Wright *v.* Fleming, 19 *N. Y. Supm. Ct.,* (12 *Hun.*), 469.)

I am fully aware that judges, in the mass of matter presented for their action, find it impossible to read and consider all the affidavits and other papers presented to them. Many orders are granted by them at the risk of the counsel applying, and they do not hesitate, when their attention is called to their illegality or impropriety, to revoke them promptly.

In this case it seems to me the attorney should, in the first instance, have applied to me by petition, on the day fixed for distribution, to insert in the decree a direction that the costs in the action should be paid

out of the surplus.   If, on such application, the court erred in its decision, the error could have been corrected on appeal.   I know of no other way by which errors of Surrogates' Courts can be corrected.   But he was not then in a position to make such application, as his costs were not taxed till the 1st May, while the decree was entered twenty days prior thereto.   At the last mentioned time (April 10th), he drew the order establishing claims, and the consent of the widow to accept a sum in gross, and partly prepared the decree of distribution, which was finished by me.   Then was the time for him to have presented his claim, if any, but there was none then existing, at least in a tangible and liquidated shape.   Indeed, in the petition presented, which contained a prayer for the sale of the premises, no mention is made of the claim in question.

The proceeding in this matter had gone through all its stages to a final decree of distribution before the court heard of this claim and twenty days before his costs were taxed or judgment docketed.

The various sections of the statute affecting the question provide, substantially, as follows: 2 R. S., 105, § 31, that the sale passes all the title and interest of the deceased at the time of death; § 32, that every sale and conveyance shall be subject to all charges, by way of judgments, mortgages or otherwise, upon the lands sold existing at the death of the owner; § 35, that the proceeds of sale be paid to the Surrogate; § 36 directs him to pay the charges and expenses of sale and to satisfy any claim of dower; § 38, that he pay *debts of deceased,* and § 43, that he distribute the surplus among the heirs or devisees *or the persons*

*claiming under them.* Hence, under this last provision, if any person had at the time of the sale held a mortgage, judgment or other claim which was a lien upon the share of any one or more of the devisees, he would have claimed under him or them, and could have claimed the share or shares of such devisee or devisees in the surplus. Here, however, as before remarked, the claim in question did not exist at the time of the sale nor on the day of distribution; no judgment had been docketed: and Mr. Clocke, notwithstanding the award of costs in the suit for construction of the will, had no lien which he could at either of these times assert. (Sears *v.* Mack's Assignees, 2 *Bradf.,* 394).

In respectfully declining, for these reasons, to obey the order of the Supreme Court, I am gratified to think Mr. Clocke is not without ample remedy. A portion of the real estate of the deceased, of the estimated value of $2,500, remains unsold, and upon it his judgment is, doubtless, a lien.*

---

* On the return of an order to show cause in the Supreme Court why the Surrogate should not be punished for disobeying its order, the court held that it had no power to interfere with the Surrogate in the matter, and the application was dismissed.